# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA and ) <br> PEOPLE OF THE VIRGIN ISLANDS ) <br> ) <br> v. ) <br> ) <br> DELROY A. THOMAS, ) <br> ) <br>         Defendant. ) <br> ) | Criminal Action No. 2015-0039 |

**Attorneys:**
**Alphonso G. Andrews, Jr., Esq.,**
**Rhonda Williams-Henry, Esq.,**
St. Croix, USVI
    *For the Government*

**Martial A. Webster, Esq.,**
St. Croix, USVI
    *For Defendant*

## **MEMORANDUM OPINION**

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Defendant Delroy A. Thomas' ("Defendant") "Motion to Dismiss for Spoliation of Evidence" ("Motion to Dismiss") filed on July 1, 2019 (Dkt. No. 293); the Government's response thereto (Dkt. No. 299); and the parties' arguments made during the pretrial conference held on July 2, 2019. For the reasons discussed below, the Court will deny Defendant's Motion to Dismiss.[1]

---

[1] The Court stated orally at the commencement of the trial in this matter on July 9, 2019 that it was denying Defendant's Motion to Dismiss. The Court stated that its rationale would follow. This Memorandum Opinion contains the Court's rationale.

## I.  BACKGROUND

On December 15, 2015, Defendant was charged by Indictment with the following counts: (1) Use of Interstate Commerce Facility in Commission of Murder for Hire, in violation of 18 U.S.C. § 1958(a); (2) Attempted Murder First Degree, in violation of 14 V.I.C. § 922(a)(1); (3) Attempted Retaliation Against A Witness, in violation of 14 V.I.C. § 1510(a)(1); and (4) Possession of Prison Contraband, in violation of 18 U.S.C. § 1709(a)(2). (Dkt. No. 1). The evidence against Defendant in this matter was obtained in large part through Jason Navarro ("Navarro"), a Confidential Informant ("CI") for the Drug Enforcement Administration ("DEA") who participated in recorded conversations with Defendant.[2] The recorded conversations, which occurred from March 9, 2015 to March 11, 2015 while Navarro and Defendant were detained at the Golden Grove Correctional Facility on St. Croix, allegedly implicates Defendant in a plot to murder two witnesses against him in a separate criminal matter filed against Defendant in the Superior Court of the Virgin Islands.

The recorded conversations allegedly reveal: that Defendant queried Navarro regarding how much the murders would cost; that Defendant would provide the payment and the weapon to be used in the murders; that Defendant provided photos and addresses of the witnesses; and that Defendant indicated he was serious about his intentions and would find someone else to commit the murders if Navarro refused. The evidence also allegedly reveals that a down payment of money was delivered to the alleged hitman for the murders.

---

[2] The Court provides this information solely for the purposes of this pretrial motion, ever mindful that Defendant Thomas is presumed innocent until proven guilty. Most of the facts discussed herein are alleged, but at this stage not conceded or proven beyond a reasonable doubt to the factfinder.

On September 29, 2013, Alexianna Charles ("Charles"), who was from St. Lucia and was Navarro's fiancée, was arrested by the Department of Homeland Security ("DHS") for immigration violations. Charles was released on bond, pleaded guilty, and was sentenced on August 19, 2014 to two years probation, with a recommendation by the Court that she be deported by DHS. On February 1, 2016, Charles was interviewed by the DEA and provided a statement pertaining to the matters in this case. On March 18, 2016, Charles was deported by DHS to St. Lucia. Charles' deportation was mentioned during Navarro's testimony at a suppression hearing in this matter on May 24, 2016.

## II. DISCUSSION

In his Motion to Dismiss, Defendant argues that the Court should dismiss this matter for spoliation of evidence and for *Brady* violations. (Dkt. No. 2932 at 3-6). Specifically, Defendant moves for dismissal because the Government deported Charles to St. Lucia on March 18, 2016. Defendant contends that by doing so, the Government "remov[ed] [] a material witness from the jurisdiction," *id*. at 2, and "failed to preserve" exculpatory information in the form of Charles' testimony establishing that Navarro—not Defendant—borrowed money from her to use as a down payment to facilitate the alleged attempted murder and frame Defendant for the crime. *Id*. at 2-3.[3] According to Defendant, without Charles' testimony, he "cannot defend this matter and is severely prejudiced." (Dkt. No. 293 at 6).[4]

---

[3] In a Report of Investigation drafted by the DEA on February 2, 2016, it was reported that Charles stated that she did not know at the time what the money was for and that she was only told that she would be paid back with $1,000. Charles further stated that she was later informed that the $500 was a "loan" to Thomas for a murder for hire plot. (Dkt. No. 293-1 at 2).

[4] As noted earlier, the fact that Charles had been deported was known to the parties since May 24, 2016. While the Court recognizes that defense counsel is the fifth lawyer to handle this long-

3

In opposition, the Government contends that Defendant's Motion to Dismiss should fail because Charles' expected testimony has no exculpatory value for Defendant. The Government maintains that the allegation that Charles was the "source" of payment for the murder for hire scheme via instructions from Navarro does not negate that Thomas remained the ultimate beneficiary of the scheme that he and Navarro were arranging. (Dkt. No. 299 at 6-7). Further, the Government contends that Defendant has other means to obtain comparable evidence, including getting testimony from two other individuals—a corrections officer and S.B.—whom Defendant alleged were participants along with Charles in the same transaction for the down payment for the murders. *Id.* at 7-8.

### A. Applicable Legal Principles

The importance of the Government's duty to preserve relevant evidence has long been recognized by the Third Circuit:

> Loss or destruction of relevant evidence by the government not only raises general questions of the fundamental fairness of a criminal trial but may also deny a defendant the right to compulsory process. The right to subpoena evidence at trial, and the obligation of the prosecutor to disclose exculpatory evidence are inherent in the conception of a criminal trial as a truth-seeking process. These rights and obligations may be undermined if the prosecution has no duty to preserve the evidence which it later must disclose.

*Gov't of Virgin Islands v. Testamark,* 570 F.2d 1162, 1166 (3d Cir. 1978). Thus, the government's "failure to preserve potentially useful evidence," i.e., evidence which "could have been subjected to tests, the results of which might have exonerated the defendant," constitutes a denial of a defendant's due process rights when a defendant "can show bad faith on the part of

---

standing case, having filed his Notice of Appearance on January 25, 2019, the Court finds it perplexing that it would take Defendant over three years—specifically until one week before trial—to raise concerns regarding a witness so allegedly critical to Defendant's case.

the [government]." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *see also California v. Trombetta,* 467 U.S. 479, 491 (1984); *United States v. Ramos,* 27 F.3d 65, 69 (3d Cir. 1994). The defendant has the burden "to show the prosecution's bad faith in ordering or permitting" the destruction of evidence. *United States v. Deaner,* 1 F.3d 192, 200 (3d Cir. 1993).

To meet this burden, "under *Youngblood* and *Trombetta,* a defendant must show that the government: '(1) acted in bad faith when it destroyed the evidence, which (2) possessed an apparent exculpatory value and, which (3) is to some extent irreplaceable.'" *United States v. Jackman,* 72 Fed. Appx. 862, 866 (3d Cir. 2003) (internal citation and quotation marks omitted); *United States v. Sherman*, 293 F. App'x 158, 160 (3d Cir. 2008) (same); *see Trombetta,* 467 U.S. at 488–89 (holding that the Due Process Clause is only violated when (1) there is "official animus . . . [or] a conscious effort to suppress exculpatory evidence," (2) the evidence "possess[es] an exculpatory value that was apparent before the evidence was destroyed," and (3) the evidence is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.").

Bad faith may be established by showing that the government had knowledge of the exculpatory value of the evidence at the time it was lost or destroyed. *Yarris v. Cnty. of Del.,* 465 F.3d 129, 142 (3d Cir. 2006); *see also Jackman*, 72 F. App'x at 866 ("[b]ad faith, 'turn[s] on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed.'") (quoting *Youngblood,* 488 U.S. at 56 n.1); *United States v. Stevens*, 935 F.2d 1380, 1388 (3d Cir. 1991) (no bad faith finding where government did not know whether lost DNA evidence would inculpate or exculpate defendant). "[T]he presence or absence of good or bad faith by the government will be dispositive." *Jackman*, 72 F. App'x at 866.

B.  Analysis

As it pertains to the first element under the *Youngblood/Trombetta* analysis, there is no evidence that the Government acted in bad faith and had a hand in deliberately removing Charles from the United States in order to prevent her from presenting what the Government knew to be exculpatory evidence. *Yarris,* 465 F.3d at 142. Indeed, there is no evidence that Charles' removal from the United States was due to anything other than the standard procedure followed by DHS in deporting unauthorized aliens. In short, there is nothing in the record to indicate that the Government had the requisite bad faith to support a due process violation when Charles was removed by DHS pursuant to procedure. *Trombetta,* 467 U.S. at 488–89; *Youngblood,* 488 U.S. at 58 ("[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."). Defendant's failure to satisfy this factor alone is a sufficient basis for the denial of Defendant's Motion to Dismiss. *Jackman*, 72 F. App'x at 866 (3d Cir. 2003); *see also Deaner*, 1 F.3d at 200 ("Without a showing of bad faith, failure to preserve evidence that might be of use to a criminal defendant [] is not a denial of due process.")

In any event, Defendant fails to satisfy the second element of the *Youngblood/Trombetta* analysis as well, because he has not shown that the lost evidence is exculpatory. Defendant asserts that Charles would testify that she received the $500, which was to be used as a down payment for the hitman, from Navarro himself and not from Defendant. However, even assuming that Charles would, in fact, testify as Defendant describes, the Court cannot discern how this testimony is of an exculpatory nature. Indeed, Defendant has failed to establish what bearing the source of the money has on his guilt or innocence in light of the elements that the Government

6

must establish to prove the crimes charged.[5] *United States v. Taylor,* 379 Fed. Appx. 240, 244 (3d Cir. 2010) (rejecting destruction-of-evidence argument where the exculpatory nature of the evidence was "dubious at best"). Accordingly, Defendant also fails to establish the second element of the *Youngblood/Trombetta* standard.

Because Defendant has not sufficiently shown that the evidence was destroyed in bad faith—which in and of itself is dispositive—and has only speculated as to how Charles' testimony may have been exculpatory, the Court need not reach the third factor here, i.e., whether Charles' testimony was "to some extent irreplaceable." *See e.g., United States v. Henry*, 2019 WL 845403, at *4 (D.V.I. Feb. 20, 2019) (denying in part defendant's motion to dismiss without reaching third factor in *Youngblood/Trombetta* because defendant failed to satisfy the first two factors); *United States v. Seibart*, 148 F. Supp. 2d 559, 571 (E.D. Pa. 2001) (same); *see also Jackman*, 72 F. App'x at 867 (affirming trial court's denial of defendant's motion to dismiss for failing to satisfy any of the three factors required under *Youngblood/Trombetta*). Accordingly, Defendant's request to dismiss this matter based on the Government's alleged failure to preserve exculpatory evidence will be denied.

\*\*\*

---

[5] Count 1 (Use of Interstate Commerce Facility in Commission of Murder for Hire, in violation of 18 U.S.C. § 1958(a)) requires proof of the following elements: (1) that Defendant Thomas used or caused someone else to use a facility of interstate or foreign commerce; (2) that this use of a facility of interstate or foreign commerce was done with the intent that a murder be committed in violation of the laws of the United States, or any State, Territory, or Possession of the United States; and (3) that the murder was intended to be committed as consideration for the receipt of money or for a promise or agreement to pay money. Thus, the offense does not concern where the source of the money originates, just as long as the murder was to be committed as consideration for money. None of the other offenses charged embody elements that involve money.

**ORDER**

**UPON CONSIDERATION** of the foregoing, it is hereby

**ORDERED** that Defendant's "Motion to Dismiss for Spoliation of Evidence" is **DENIED**.

**SO ORDERED**.

Date: July 16, 2019

                      _____/s/_____
                      WILMA A. LEWIS
                      Chief Judge